(103 So. 94)

### WAY v. KIRKPATRICK LUMBER & TIMBER CO.    (2 Div. 291.)

(Court of Appeals of Alabama.    Feb. 17, 1925.)

1. Pleading ⬤⟹49—Complaint failing to show whether buyer elected to stand on rescission or breach of warranty demurrable.

In action by buyer, after paying sight draft for carload of lumber, claimed to be below grade contracted for, against seller, complaint, failing to show whether buyer elected to stand on rescission or to sue for damages for breach of warranty held subject to demurrer.

2. Sales ⬤⟹396—Failure of buyer to allege rejection of lumber fatal to action based on rescission of contract.

Where buyer paid sight draft for carload of lumber, claimed to be below grade contracted for, complaint based on rescission held defective, where it failed to allege rejection of lumber.

3. Sales ⬤⟹397—Evidence that seller's inspection, before shipment, showed lumber up to contract grade should have been admitted.

On claim of buyer that carload of lumber was below grade contracted for, where car had been opened by buyer after its arrival, and many days had elapsed before official inspection showing lumber under grade, evidence that seller's inspection before shipment showed

lumber up to contract grade should have been admitted.

**4. Customs and usages ⬅=17—Evidence of usage or custom not allowed to vary or contradict terms of express contract.**

Evidence of usage or custom is not allowed to vary or contradict terms of an express contract.

**5. Customs and usages ⬅=15(2)—Evidence of customary mode of settlement, where lumber sold was claimed below grade, should have been admitted in action on written contract.**

On claim that car of lumber was not entirely up to grade, evidence that customary mode of settlement was to allow seller to make good discrepancy by replacing lumber rejected, or allowing credit for difference in ·value, at buyer's option, should have been admitted, as explanation of term in written contract "grade and count guaranteed," which would otherwise be meaningless.

Appeal from Circuit Court, Marengo County; John McKinley, Judge.

Action for damages by the Kirkpatrick Lumber & Timber Company against Thad Way, doing business as the Albardell Mills, for breach of an agreement of sale of lumber. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Counts 2 and 3 of the complaint are as follows:

"Count 2. The plaintiff claims of the defendant, to wit, $1,137.72 with interest thereon damages for the breach of an agreement entered into by and between ·plaintiff and defendant on, to wit, 5th day of April, 1920, in substance as follows: The defendant did sell to plaintiff, to be shipped to Kenzie Manufacturing Company, Chicago, Ill., one car of lumber 1x6 and wider, B and better, steam kiln dried, short leaf, rough, at the price of $100 per thousand feet f. o. b. mill at Thomaston, Ala.; terms 3 per cent. special cash discount, and draft date of shipment; the defendant guaranteeing grade and count. And plaintiff avers that the defendant did ship a car of lumber consigned to plaintiff's· customer, Kenzie Manufacturing Company, at Chicago, Ill. And plaintiff avers that on the date of the shipment of said car the defendant did draw a draft in the sum of, to wit, $1,137.72 on the said plaintiff, which said draft, for the price of said car of lumber, was promptly paid by said plaintiff, and plaintiff avers that said car of lumber did not come up to the grade and specifications hereinbefore set out, but was of a lower grade and of much less value than the car of lumber defendant sold· and agreed to ship, for which said cause said car of lumber was rejected by the said Kenzie Manufacturing Company, who refused to accept and pay plaintiff for same, and thereupon plaintiff avers it rejected said car of lumber, notice of which said rejection plaintiff thereupon immediately gave to the defendant, and demanded that said defendant comply with his said contract. And plaintiff avers the defendant has wholly failed to comply with his said contract and agreement with reference to said car of lumber sold him and which defendant agreed to ship, and plaintiff avers that he paid said draft without seeing said car and without knowing that said car did not, comply with the agreement of defendant as to grade and specification, wherefore plaintiff suffers damages as aforesaid.

"Count 3. Plaintiff adopts all of count 2 down to and including the following words: 'The defendant guaranteeing grade and count.' And plaintiff further avers that at the time of acceptance of the above contract, the defendant knew that said car of lumber was being purchased by plaintiff from the defendant for the purpose of filling an order, which the plaintiff had for same from the said Kenzie Manufacturing Company, at Chicago, Ill. And plaintiff avers that the defendant accepted order for said car, and agreed to ship said car of lumber to plaintiff's customer, Kenzie Manufacturing Company, at Chicago, Ill.; and plaintiff avers that the defendant did ship a car of lumber consigned to plaintiff's customer Kenzie Manufacturing Company, at Chicago, Ill. And plaintiff avers that on the date of the shipment of said car the defendant did draw a draft in the sum of, to wit, $1,137.72 on the said plaintiff, which said draft, for the price of said car of lumber, was promptly paid by said plaintiff. And plaintiff avers that said car of lumber did not comply with grade and specifications hereinbefore set out, but was of a lower grade and of less value, for which said cause said car of lumber was rejected by the said Kenzie Manufacturing Company, who refused to accept and pay plaintiff for same; and plaintiff avers it also rejected said car because of its being lower grade and less value than the car of lumber sold plaintiff by defendant as per his, the defendant's, said contract. ' Of which said rejection, plaintiff thereupon immediately gave notice to the defendant, and demanded that said defendant comply with his said contract. And plaintiff avers that defendant has wholly failed to ship a car of lumber in compliance with his said contract and agreement, and plaintiff avers that when he paid said draft he· did not know that said car was of less grade and value than the car defendant sold and agreed to ship defendant."

By amendment, the following averments were added to each of said counts:

"And plaintiff avers that it purchased said car of lumber to be sold to, and plaintiff avers it did sell said car of lumber to, the said Kenzie Manufacturing Company, at and for the price of $1,524.51, which said sale to said Kenzie Manufacturing Company was made on, to wit, February 18, 1920, and was bought by plaintiff from defendant to fill said order. And plaintiff further avers that by reason of said car of lumber being under grade and of less value than it had sold to Kenzie Manufacturing Company, and sold to plaintiff by defendant to be shipped to said Kenzie Manufacturing Company. And plaintiff avers that by reason of the rejection of said car of lumber on account of same being under grade and of less value than the car of lumber purchased by plaintiff and sold to Kenzie Manu-

facturing Company, the plaintiff suffered a loss of, to wit, $908.56. And plaintiff further avers that, because of said car of lumber being under grade and on account of defendant demanding an inspection and classification by the Southern Pine Association, plaintiff did suffer the following losses which it incurred at the instance of the defendant in having said car of lumber inspected, to wit:

For labor in unloading and reloading said car of lumber ................................ $ 20 50
For five months storage on said car of lumber    23 38
For demurrage on said car of lumber........    13 39
For reconsignment and tax..................     5 15
For penalty and tax on said car of lumber...    61 80
                                              ————
                                              $124 22
—with the interest thereon."

William Cuninghame, of Linden, for appellant.

It was error to overrule demurrer to counts 2 and 3. 24 R. C. L. 65, 550; 39 Cyc. 1999; 15 Cyc. 253; Brooks v. Romano, 149 Ala. 301, 42 So. 819; Wilson v. Stevens, 129 Ala. 637, 29 So. 678, 87 Am. St. Rep. 86; Mutual Loan Soc. v. Stowe, 15 Ala. App. 293, 73 So. 202. Defendant should have been permitted to show the trade custom as to adjustment. 27 R. C. L. 189; 29 Cyc. 1082; 29 A. & E. Ency. Law, 386; Byrd v. Beall, 150 Ala. 122, 43 So. 749, 124 Am. St. Rep. 60. The court erred in its ruling on the evidence offered by the witness Nored. 35 Cyc. 610; Frith v. Hollan, 133 Ala. 583, 32 So. 494, 91 Am. St. Rep. 54; Bessemer Co. v. Brannen, 138 Ala. 157, 35 So, 56.

I. I. Canterbury, of Linden, for appellee.

The complaint was not subject to demurrer. 24 R. C. L. § 331; 36 Cyc. 617; Code, 1907, § 5328; Taylor v. Yates Mach. Co., 208 Ala. 528, 94 So. 588; Abraham Bros. v. Means, 16 Ala. App. 42, 75 So. 187; McCoy v. Prince, 11 Ala. App. 388, 66 So. 950. A custom is not admissible to vary an express contract. Florence Wagon Works v. Asphalt Co., 145 Ala. 677, 40 So. 49; Mobile, etc., R. Co. v. Bayshore Lbr. Co., 165 Ala. 610, 51 So. 956, 138 Am. St. Rep. 84; 4 Michie's Ala. Dig. 613.

RICE, J. Appellee brought this action to recover damages of the appellant for the breach of an agreement entered into by and between the parties on the 5th day of April, 1920, whereby the appellant sold to the appellee, to be shipped to Kenzie Manufacturing Company, of Chicago, Ill., a car of lumber of certain grades and dimensions at a certain price. The transaction was negotiated and consummated by letters and telegrams, showing the acceptance by appellant of the order given by appellee on April 5, 1920. Thereafter on April 7, 1920, appellant shipped, in pursuance of the agreement, to the Kenzie Manufacturing Company a car of lumber claimed by him to be in accordance with the terms of sale, and, still in pursuance of the terms of agreement, drew a draft upon the appellee through the Marengo County Bank for $1,137.52, the invoice price of the car of lumber shipped, less the discount provided for in the agreement. This draft was paid by appellee upon presentation.

Later, on May 26, 1920, appellee sent appellant a telegram, complaining that its Chicago representative reported the car of lumber mismanufactured and below grade, and inquiring if appellant desired official inspection, which had been provided for in the agreement of sale. There followed an exchange of letters and telegrams between the parties which resulted in the appellee writing to the appellant, under date of September 30, 1920, a letter containing this sentence:

"This shipment has been refused entirely, based upon the inspection report of the Southern Pine Association, which we agreed to abide by."

And this:

"As stated to you, our customer has refused this car and we notified you that we had rejected same."

It should be said that during the time between May 26th and September 30th an official inspection had been ordered by the appellant which was made by the Southern Pine Association, and that the order of the appellee given to and accepted by appellant, for the lumber, contained the provision that—

" * * * All stock purchased is to be manufactured and graded according to rules adopted by the Southern Pine Association. * * * In the event of dispute as to quality or manufacture, the official inspection of said association is to govern; party at fault to pay cost of inspection."

This inspection showed, among other things, that not all the lumber appellant claimed was shipped was there, and that the identification stamp appellant claimed was on every piece was on a "majority of the stock." The inspection was made in Chicago, many miles from the point of shipment, and some time after the car of lumber had been examined by appellee's Chicago representative. The inspection showed that out of 10,812 feet examined, 8,093 feet was reported by the inspector to be of the grade called for by the agreement of sale.

Counts 2 and 3 of the complaint were demurred to upon many grounds, and the action of the trial court separately in overruling appellant's demurrers to these counts, and to each of them, is now insisted upon as error that should reverse the case. If there is vice in either of said counts, the same vice would appear to be, in substance, present in both. Therefore we will consider them together.

[1] "Where the right to return the goods for breach of warranty is recognized the buyer must, as in other cases where a right

of rescission is sought to be exercised, assert his right promptly upon discovery of the breach, otherwise he will be deemed to have waived this right." 24 R. C. L. 291. And "the institution by the buyer of an action for damages for breach of the warranty or the interposition of a counterclaim therefor is a waiver of any right to rescind on account of such breach." 24 R. C. L. 292.

"As in case of rescission for other causes, such as fraud, a return of the goods is essential to a rescission for breach of warranty." 24 R. C. L. 292; Eastern Granite Roofing Co. v. Chapman & Co., 140 Ala. 440, 37 So. 199, 103 Am. St. Rep. 58.

"Where the breach of warranty is set up in bar of an action for the price * * * it must be alleged that a return of the property was tendered or that it was worthless." 24 R. C. L. 293.

"When one party to a contract repudiates it, the injured party may elect to pursue one of several remedies. He may treat the contract as rescinded, and recover upon the quantum meruit, so far as he has performed; and, if in performing his part of the contract, he has paid money to the other party, he may maintain an action for money had and received; or he may keep the contract alive for the benefit of all parties, holding himself at all times ready and able to perform, and at the end of the time specified in the contract for performance maintain assumpsit as for a breach of the contract, and recover the loss sustained, and profits, not speculative, he would have realized, if he had not been prevented from performing the contract; or, where specific performance can be compelled, he may, by proceedings in equity, compel specific performance. * * * These remedies carry a different measure of relief and cannot be concurrently pursued." Mutual Loan Soc., Inc., v. Stowe, 15 Ala. App. 293, 73 So. 202.

"When the breach occurs the party to whom performance is due must elect whether he will rescind or will demand a continued performance." 13 C. J. 613.

Analyzing count 2 in the light of the principles of law above quoted, we are led to the conclusion that it was subject to some one or more of the objections pointed out by appellant's demurrers. It is not possible from a reading of said count to determine whether it was the purpose and intention of appellee to rely upon a rescission of the contract set out, or to rest his action upon damages accruing because of appellant's alleged breach of warranty as to the quality and manufacture of the lumber shipped in fulfillment of the terms of sale. Neither is it clear from the count just what amount is claimed of appellant. We therefore hold that the trial court erred in overruling appellant's demurrers to count 2 as last amended.

[2] All that we have said with reference to count 2 applies with equal force to count 3, with the additional observation that count 3 does not purport to allege a rejection by appellee of the car of lumber shipped; thus rendering invalid that phase of the count which would claim damages as depending upon a rescission of the contract declared upon. It is therefore manifest that error was committed by the trial court in overruling appellant's demurrers to count 3.

[3] The inspection provided for in the contract of sale was made at Chicago, Ill., a long distance removed from the point of shipment. The sale was made f. o. b. cars, Thomaston, Ala., the shipping point. Appellee's representative had opened the car and examined the lumber after its arrival in Chicago, or had examined the lumber after the car had been opened. Many days had elapsed since the day of shipment before the official inspection, showing lumber under the grade called for to be in the car, was made. Under these circumstances, the sale being of lumber of certain grades and manufacture, we think it was entirely competent for appellant to prove by his witness, Nored, admitted to be an expert, and qualified to testify, that he personally inspected each piece of the lumber in question as it was loaded into the car at Thomaston, Ala., and that each piece of same was of the grade of B and better. The court therefore erred in refusing to allow appellant to make this proof by this witness. Nat. Chem. Co. v. Nat. Aniline & Chem. Co., 3 Ala. App. 469, 57 So. 114.

[4, 5] While we recognize the principle that evidence of a usage or custom may not be allowed for the purpose of varying or contradicting the terms of an express contract, yet we are persuaded, and so hold, that in this case the trial court committed error in refusing to allow appellant to make proof by his witnesses Hill, Way, King, and Eiland as to the established custom among lumbermen of making settlement of such controversies as that that arose between appellee and appellant with reference to whether appellee should accept the lumber which was up to grade, and allow or call upon appellant to make good the discrepancy either, at the option of appellee, by replacing the lumber rejected with other lumber of the grade called for, or by paying to appellee, or allowing him credit for, the amount of the difference in value between the rejected lumber which was shipped, and that that should have been shipped. This for the reason that the very term "grade and count guaranteed" contained in the contract of sale would seem to contemplate some sort of adjustment in the event the grade and count did not come up to specification. Otherwise this term in the contract would be meaningless and surplusage, since by operation of law the buyer would not be obligated to accept what he did

not buy. Under these circumstances we think it proper and permissible for the appellant to have been allowed to prove, by these admittedly competent witnesses, what the general usage and custom were.

Other errors are assigned and mentioned in brief of appellant, but are not urged, or insisted upon, and are therefore waived. And then, too, the same may not arise upon another trial of the case.

For the errors pointed out, let the case be reversed and remanded.

Reversed and remanded.